# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**23-579 consolidated with 23-379**

**VICKI HOOD, ET AL.**

**VERSUS**

**SASOL CHEMICALS (USA), LLC, ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2019-0891
HONORABLE RONALD F. WARE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**SHANNON J. GREMILLION**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, Charles G. Fitzgerald, and Gary J. Ortego, Judges.

**MOTION TO STRIKE DENIED.**
**JUDGMENT REVERSED.**

**Robert E. Kerrigan, Jr.**
**Raymond C. Lewis**
**Justine Ware**
**Deutsch Kerrigan, L.L.P.**
**755 Magazine Street**
**New Orleans, LA 70130**
**(504) 593-0697**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
     **Edward "Butch" Lemelle, Jr.**
     **Sasol Chemicals (USA), LLC**
     **Community Interaction Consulting, Inc.**

**Phillip W. DeVilbiss**
**Terrence D. McCay**
**Kean Miller LLP**
**4865 Ihles Road**
**Lake Charles, La 70605**
**(337) 430-0350**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
     **Edward "Butch" Lemelle, Jr.**
     **Sasol Chemicals (USA), LLC**
     **Community Interaction Consulting, Inc.**

**Erich P. Rapp**
**Gregory M. Anding**
**Isaac M. Gregorie, Jr.**
**Erin Lutkewitte Kilgore**
**Kean Miller LLP**
**Post Office Box 3513**
**Baton Rouge, LA 70821-0000**
**(225) 387-0999**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
     **Sasol Chemicals (USA), LLC**
     **Edward "Butch" Lemelle, Jr.**
     **Community Interaction Consulting, Inc.**

**V. Ed McGuire, III**
**Plauché, Smith & Nieset, L.L.C.**
**P. O. Drawer 1705**
**Lake Charles, LA 70602**
**(337) 436-0522**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Calcasieu Parish Police Jury**

**Jonathan Johnson**
**Kilburn S. Landry**
**The Johnson Firm**
**1419 Ryan Street**
**Lake Charles, LA 70601**
**(337) 433-1414**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Vicki Hood**
    **Jeremy Hood**
    **Jacob Hood**
    **Amy Lopez**
    **Joshua Hood**
    **Amanda Keller**

**Aaron Broussard**
**Broussard Injury Lawyers**
**1301 Common Street**
**Lake Charles, LA 70601**
**(337) 439-2450**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Vicki Hood**
    **Jeremy Hood**
    **Jacob Hood**
    **Amy Lopez**
    **Joshua Hood**
    **Amanda Keller**

**GREMILLION, Judge.**

In this civil matter, in which an appeal has been consolidated with an application for supervisory writ, three defendants, Sasol Chemicals (USA), LLC, Edward "Butch" Lemelle, and Community Interaction Consulting, Inc., (collectively "Sasol") seek reversal of the trial court's grant of motion for summary judgment filed by the Calcasieu Parish Police Jury (CPPJ). Additionally, Sasol has filed a motion to strike the plaintiffs' brief. For the reasons that follow, we deny Sasol's motion to strike and reverse the trial court's judgment.

## FACTS AND PROCEDURAL POSTURE

The matter involves an accident that allegedly occurred on January 3, 2019. Jacob Hood was driving a U-Haul truck on East Burton Street, also known as Old Spanish Trail, in Sulphur, Louisiana, when a tree (the Tree) located at 3924 East Burton (the Burton property) fell on the cab of the truck. Jacob's father, William, was a passenger. Jacob survived the accident, but William did not. The petition filed by the plaintiffs allege that William lived for some time after the accident.

Jacob, his siblings, and William's surviving spouse filed a survival action for the injuries William sustained and a wrongful death action. Jacob also asserted a claim pursuant to La.Civ.Code art. 2315.6 for witnessing his father's injury and death. The original defendants were Sasol Energy (USA), LLC, Sasol Chemicals (USA), LLC, Sasol (USA) Corporation, and CPPJ. That petition alleged that the Sasol defendants are part of a single business entity headed by Sasol (USA) Corporation; without endorsing this legal theory, this court will simply refer to "Sasol" for the sake of brevity and clarity. Sasol acquired ownership of the Burton property in December of 2016.

Plaintiffs alleged:

6.

At the time the land was purchased from Dorothy Joshua and thereafter, there was a large pine tree on that parcel of land near the public right of way.

7.

Upon information and belief, on or about October 18, 2017, employees of Calcasieu Parish Police Jury, who were in the course and scope of their employment, removed a driveway from the land which extended over the public right of way from Old Spanish Trail Road, pursuant to a work order issued by the Division of Engineering/Public Works, which was located a short distance from the large pine tree.

8.

Upon information and belief, the ground and roots supporting the pine tree were disturbed and damaged during the removal of the driveway.

. . . .

18.

In the alternative, the aforementioned crash and subsequent death of William Hood was caused by the negligence of defendant, Calcasieu Parish Police Jury, its agents or employees, whose negligence includes, but is not limited to:

    a.    Failing to perform their work in a safe and reasonable manner;

    b.    Failing to ensure their work did not damage the roots of the subject tree;

    c.    Failing to warn the property owner of the dangerous condition it caused or contributed to when it removed the driveway;

    d.    Failing to inspect the roots of the tree after their work was performed to ensure they were not damaged;

    e.    Any and all other acts of negligence which may be proven at trial of this matter.

By a first supplemental and amending petition, plaintiffs added Edward "Butch" Lemelle, Jr., and Community Interaction Consulting, Inc. (CIC), as defendants. The amended petition alleged that CIC was engaged in a program Sasol instituted around its Westlake plant to purchase property. Mr. Lemelle was an

2

employee of CIC who allegedly failed to properly inspect the Tree and notice "apparent" lightning damage and report that to Sasol. In addition to liability as Mr. Lemelle's master, CIC was alleged to have failed to properly train and supervise him. Sasol alleged, "**FIRST DEFENSE** Plaintiffs' alleged damages, if any, were caused by individuals or entities for whose conduct Sasol is not responsible." This general allegation of third-party fault was echoed by the answers of Lemelle and CIC. No specific acts of other defendants were alleged by Sasol.

In January 2023, plaintiffs filed a motion for partial summary judgment to eliminate the defendants' plea of *force majeure* as an affirmative defense. Sasol, Lemelle, and CIC then filed a motion for summary judgment (the Sasol motion) on the issue of liability, followed by a motion for summary judgment from CPPJ. The plaintiffs' *force majeure* summary judgment motion presents no issue currently before us. The motion for summary judgment filed by Sasol is addressed in the consolidated matter, bearing docket number 23-379.

On March 10, 2023, CPPJ filed a motion for summary judgment to dismiss the plaintiffs' demands against it. This motion asserted that no genuine issue of material fact existed demonstrating that its works caused or contributed to the failure of the tree. In support of its motion, CPPJ attached the affidavit of Theresa Champeaux, the CPPJ Assistant Director of the Division of Engineering and Public Works and former Assistant Director of the Department of Public Works, and excerpts from the deposition of Dr. Frederick Fellner, an urban forester. By reference, CPPJ incorporated Exhibits 7, 8, and 9 from a motion for summary judgment filed by Sasol, Lemelle, Jr., and CIC, consisting of an affidavit of Scott Courtright, an arborist, along with weather data from the National Weather Service.

*Affidavit of Theresa Champeaux*

3

For ten years, Ms. Champeaux was the Assistant Director of the CPPJ Department of Public Works. For two years, she has been the Assistant Director of the Division of Engineering and Public Works. In her capacity with CPPJ, Ms. Champeaux has become familiar with the Burton property. The Tree was forty feet from the centerline of the road. CPPJ's right of way extends thirty feet from the centerline.

All CPPJ road crews, engineers, and supervisors continually monitor the 1,258 miles of roadway for which CPPJ is responsible. They primarily look for dead trees but also look for live trees they think may pose a safety hazard. Trees located within CPPJ's right of way are either removed by CPPJ crews or contractors. When a tree poses a hazard and is outside the right of way, CPPJ attempts to contact the landowner for permission to remove it.

No work order was ever submitted for the Tree, which means no one thought it was a hazard. Further, no member of the public called to lodge a complaint to CPPJ about the Tree. Ms. Champeaux reviewed several photos of the Tree, which she would describe "as a normal living pine tree, consistent with many of the trees lining multiple Parish roads throughout our road system." There is "no indication from the photographs taken before the accident from which I would have expected one of our employees, engineers, or managers to single out this tree as being one of particular concern. The tree was clearly alive and green."





*Deposition of Dr. Fellner*

Dr. Fellner possesses a master's degree and Ph.D. in urban forestry. He holds certification as a master arborist from the International Society of Arboriculture.

Dr. Fellner was retained, along with Dr. Malcolm Guidry, another arborist, to assist plaintiffs in ascertaining the cause of the Tree's failure. He testified extensively about potential causes of tree failure in general. He was asked specifically about damage to the Tree's roots from CPPJ work in the ditch:

> [Quoting Dr. Fellner's report] "Root growth from the pine tree was found in the ditch line running linearly along the ditch. Some roots were up to three inches in diameter."
>
> . . . .
>
> Q. Is it—is your opinion that the presence of the roots or the presence of this ditch somehow damaged the root structure?
>
> A. The— certainly it damaged the roots that were exposed and scraped and broke off in the ditch.
>
> . . . .
>
> Q. It is your opinion that the presence of the ditch somehow impacted the structure or the structural integrity of the tree. Am I right?
>
> A. No.
>
> . . . .
>
> Q. But this damage that you described to the root structure in the ditch, is it your testimony that that contributed to or caused the failure of the tree in this case?
>
> A. No. . . . No. The time period is too short. . . . It wasn't a good thing for the tree, but the time period was too short for decaying.

Drs. Fellner and Guidry's report was attached to Dr. Fellner's deposition. That report concluded:

> It is our opinion that the pine tree at issue should have been considered a high risk of failure and that it was obviously damaged and diseased. A cursory inspection of the tree during the work to empty and secure the lot should have revealed the need to remove this tree and therefore the hazard it represented. Based on discovery, it is our opinion that these conditions were open and obvious. Consequently, more likely than not, the structural defects of the tree should have been noticed.

Plaintiffs did not oppose CPPJ's motion for summary judgment, but Sasol did. The Sasol defendants decried the plaintiffs' "gamesmanship" in not opposing CPPJ's motion in order to keep the jury from assessing CPPJ's fault on the verdict form. Any evidence that demonstrated Sasol's fault applied at least as much to CPPJ, which, Sasol argued, owed a higher duty than Sasol to ensure the safe, free flow of traffic on East Burton.

The trial court granted CPPJ's motion for summary judgment. This appeal followed. The plaintiffs have filed a brief supporting CPPJ's summary judgment, and Sasol has moved to strike that brief on the grounds that plaintiffs were not the movers in the matter at issue, did not appeal CPPJ's judgment, and "did not otherwise intervene in Appellants' appeal from the trial court's judgment."

## DISCUSSION AND ANALYSIS

### I. The motion to strike

Sasol adopts the position that plaintiffs' brief should not be allowed because they took no action to join the appeal. In *Stelly v. Nat'l Union Fire Ins. Co.*, 18-293 (La.App. 3 Cir. 2/6/19), 266 So.3d 395, a summary judgment was granted to one of several defendants. On appeal, a co-defendant filed a brief supporting the judgment, and plaintiff moved to strike the brief because the co-defendant lacked standing, i.e., the judgment was not "final" as to the co-defendant. This court denied the motion to strike. Louisiana Code of Civil Procedure Article 2086 states, "A person who could have intervened in the trial court may appeal, whether or not any other appeal has been taken." We held, "Where one may exercise the right to appeal merely by virtue of their ability to have intervened in the trial court, reasoning *a fortiori*, we find that Cecilia, a named party to the suit which is subject to the instant appeal, certainly has a justiciable right to participate in this appeal." *Stelly*, 266 So.3d at 412.

The reasoning of *Stelly* is sufficiently compelling to control in the instant case, in which the judgment *is* final as to plaintiffs. That plaintiffs have chosen to support the judgment rendered against them is of no moment; they could have appealed and, thus, are entitled to participate in the present appeal. The motion to strike is denied.

## II. On the merits

Appellate courts review summary judgments de novo utilizing the same analysis employed by a trial court: do the pleadings, memoranda, affidavits, depositions, answers to interrogatories, and other documents that may properly be considered demonstrate that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law? La.Code Civ.P. art. 966; *Litel Explorations, L.L.C. v. Aegis Dev. Co., L.L.C.*, 20-373 (La.App. 3 Cir. 11/12/20), 307 So.3d 1087, *writ denied*, 20-1428 (La. 2/9/21), 310 So.3d 184.

Sasol argues that the duty of CPPJ to guard against trees falling into the roadway is higher than its duty as the owner of the property from which the tree fell:

> The primary duty of CPPJ is to continually maintain the public roadways in a condition that is reasonably safe and does not present an unreasonable risk of harm to the motoring public exercising ordinary care and reasonable prudence. LA. REV. STAT. § 48:21(A);Herod v. State ex rel. DOTD,2023-0017(La.App. 1 Cir. 8/24/23), --- So.3d ---, 2023 WL 5441394 *2; Grant v. Allstate Ins. Co., 96-1028 (La. App. 3 Cir. 6/4/97), 696 So.2d 275,277-78,writ denied, 97-1579 (La. 10/10/97), 703 So.2d 605, and writ denied, 97-1717 (La. 10/10/97), 703 So.2d 606; Young v. State ex rel. DOTD, 2020-0526 (La. App. 1st Cir. 12/30/20), 318 So.3d 887, 895. "This includes the duty to look for situations where a condition off of the right-of-way may endanger the safety of motorists." Herrod, 2023 WL 5441394 at *2; Grant, 696 So.2d at 277-78; Irion v. State ex rel. DOTD, 98-2616 (La. App. 1st Cir. 5/12/00), 760 So.2d 1220, 1228, writ denied, 00-2365 (La. 11/13/00), 773 So.2d 727. "The [CPPJ's] duty in that circumstance is to inspect for dead trees or dead limbs 'or those which manifest some other indication that they are likely to fall into the roadway' and remove them within a reasonable time." Herrod, at *2 (emphasis added) (citing Thompson v. State, 97-0293 (La. 10/31/97), 701 So.2d 952, 956) The CPPJ cannot knowingly allow a condition to exist that is a hazard to a reasonably prudent driver but must take reasonable measures to eliminate or reduce the risks associated with the dangerous condition or to warn the public

of the danger, risk, or hazard involved. Herrod, 2023 WL 5441394 at
*2; Young, 318 So.3d at 895.

Appellants' brief at 10 (emphasis in original).

CPPJ counters that the only allegations of fault against it involved damaging the tree during the removal of the culvert. Sasol dismisses this argument out-of-hand, because CPPJ asserted in its motion for summary judgment that the damage to the Tree's roots played no part in its failure *and* that it neither knew nor reasonably should have known of any defects in the Tree.

This represents a foundational issue that must be addressed. If the allegations do not invoke a duty on CPPJ's part regarding protecting the roadway from the Tree, CPPJ's motion for summary judgment is well founded; the evidence cited above demonstrates that the culvert/driveway work performed by CPPJ in no way contributed to the Tree's failure.

Plaintiffs asserted specific acts of negligence, including, "but not limited to. . . Any and all other acts of negligence which may be proven at trial of this matter." Sasol asserted the fault of parties for whom it was not responsible; the only party not fitting into that category is CPPJ.

As a general rule, impermissible open-ended allegations of fault are properly addressed either through an exception of vagueness or a motion to strike. *Snoddy v. City of Marksville*, 97-327 (La.App. 3 Cir. 10/8/97), 702 So.2d 890. Pursuant to La.Code Civ.P. art. 926(B), objections not raised in a dilatory exception are waived. No such exception was filed in response to the plaintiffs' petition; thus, the issue of CPPJ's duty to maintain safe roads is properly before the court.

In the companion matter, we have determined "that a genuine issue of material fact exists regarding constructive notice of the defect or defects in the Tree that allegedly led to this accident[.]" *Hood v. Sasol Chemicals (USA), LLC*, 23-379, p.

9

8 (La.App. 3 Cir. __/__/__), ___ So.3d ___, ___. In its opposition, as noted above, Sasol incorporated by reference the plaintiffs' opposition to their motion; if they are not entitled to summary judgment, neither is CPPJ. This incorporation by reference is now allowed by La.Code Civ.P. art. 966(A)(4)(b).

The duty of CPPJ to ensure the safety of roads in its network is directly analogous to the State Department of Transportation and Development's duty regarding State roads. In *Thompson v. State*, 97-293, pp. 3-4 (La. 10/31/97), 701 So.2d 952, 956, the supreme court summarized that duty:

> The state's actual duty with respect to Highway 628 was to keep the road and its shoulders in a reasonably safe condition. *Campbell,* 648 So.2d 898; *Manasco v. Poplus,* 530 So.2d 548, 549 (La.1988). The state is not the guarantor of the safety of motorists. *Sinitiere v. Lavergne,* 391 So.2d 821 (La.1980).

> The plaintiffs cite a number of cases which indicate the state has a duty to go beyond its right of way to remove or protect against dead trees which could fall onto the roadway. The DOTD has been held liable for its failure to discover and remove such trees, *Grant v. Allstate Ins. Co.,* 96–1028 (La.App. 3d Cir. 6/4/97), 696 So.2d 275, or to remove such trees when discovered, *Wilson v. State, Through Dept. of Highways,* 364 So.2d 1313 (La.App. 3d Cir.1978).

> In these cases the risk to be protected against is a tree falling onto a highway and obstructing it or striking a passing vehicle. The state's duty to protect against this risk is to inspect for dead trees and remove them within a reasonable time. The state is not required to inspect for all trees which could fall on the road and remove them simply because they have the potential to fall onto the road.

> Similarly, the state's duty with respect to the limbs was to inspect them, as they inspect roadside trees, by looking for dead limbs or those which manifest some other indication that they are likely to fall into the roadway and to remove such limbs within a reasonable time. This court has rejected a finding of liability against the state where a dead tree which fell onto a highway was not discovered by the DOTD due to the presence of other trees which obscured the view of the dead tree and the presence of bark on the lower portion of the trunk. *Lewis v. State Through Dept. of Transp. and Development,* 94–2370 (La. 4/21/95), 654 So.2d 311.

The obligation of CPPJ differs depending upon whether a hazard lies within its right of way. *Herod v. State Through Dep't of Transp. and Dev.*, 23-17 (La.App.

10

1 Cir. 8/24/23) (unpublished opinion) (2023 WL 5441394). When the "thing" that causes damage lies outside the right of way, the public body does not have care, custody, or control and can only be found liable under a simple negligence analysis. *Id.* In the present case, the Tree was located approximately ten feet outside CPPJ's right of way.

CPPJ asserts that its duty is to inspect for dead trees. In support thereof, it too cites *Thompson*, 701 So.2d 952, 956, "The state's duty to protect against this risk is to inspect for dead trees and remove them within a reasonable time. The state is not required to inspect for all trees which could fall on the road and remove them simply because they have the potential to fall onto the road." However, the supreme court in *Thompson* also held that the State has a duty to "look for dead limbs *or those which manifest some other indication that they are likely to fall into the roadway* and to remove such limbs within a reasonable time." *Id*. (emphasis added).

In *Greer v. State ex rel. Dep't of Transp. and Dev.*, 06-417, p. 1 (La.App. 3 Cir. 10/4/06), 941 So.2d 141, 145, *writ denied*, 06-2650 (La. 1/8/07), 948 So.2d 128, this court annunciated a plaintiff's burden of proof against the State as, among other elements, proving that "the tree was defective, i.e., it posed an unreasonable risk of harm[.]" While the parties focused their attention on establishing whether the tree was inside the State's right of way, this court found "this factual finding is not determinative of the duty owed by DOTD." *Id*. Rather, the court adopted the trial court's jury instruction: "The duty of the [DOTD] is to observe trees that [are] dead or leaning *or otherwise appear defective by general observation* and remove them within a reasonable time. This applies to trees on property adjacent to the [DOTD's] right-of-way." *Id*. (emphasis added). The duty, then, is not to inspect only for dead trees but also those that through general observation appear to pose an unreasonable risk of harm.

Ms. Champeaux attested in her affidavit that she saw nothing in the photographs from 2008 or 2014 that would have excited further inquiry on the part of the employees in her department. In his affidavit opposing Sasol's motion for summary judgment, Dr. Fellner attested, "The lean of the tree, the flat top [from the dead area], the lack of [vertical] correction, the dead parts of the top of the tree and unbalanced crown were all readily observable by anyone as shown on a Google photo from May 2014, five years prior to the subject incident, as well as in 2008." *Hood*, 23-379 at p. 5. We agree with CPPJ's assertion that it is not required to enter Sasol's property to inspect the backside of the tree; however, we find that Dr. Fellner's affidavit and deposition, among other evidence submitted in opposition to Sasol's motion raise a genuine issue of material fact as to whether CPPJ should have identified the Tree as a hazard to the motoring public and taken action to remediate.

Accordingly, the judgment of the trial court is reversed. All costs of this appeal, in the amount of $9,894.85, are taxed to the Calcasieu Parish Police Jury.

**REVERSED.**