CHUTZ, J. 12This -is an appeal from a summary judgment dismissing plaintiff-appellant, James A. Ritchey’s (Mr. Ritchey), personal injury suit against defendants-appellees, State Farm Mutual Automobile Insurance Company (State Farm) and Dawn Bonvil-lain (Ms. Bonvillain). For the following reasons, we affirm. FACTUAL AND PROCEDURAL BACKGROUND This litigation arises from a vehicular accident that occurred at the intersection of Farrel and Kaliste Saloom Roads in Lafayette, Louisiana. Shortly before 12:36 p.m. on November 27, 2013, Mr. Ritchey was traveling west on Farrel Road, which is controlled by a stop sign at‘its intersection with Kaliste Saloom. When he stopped at the stop sign, the traffic at the intersect tion was congested, with multiple cars in the left-turn lane on Kaliste Saloom waiting to turn onto. Farrel Road. Mr. Ritchey intended to go straight across Kaliste Sa-loom and continue west on Farrel Road. He proceeded into the intersection when the driver of the first vehicle in the left-turn lane on Kaliste Saloom “waved him out.” Mr. Ritchey was unfamiliar with the intersection and did not realize there was a traffic lane to. the right of the left-turn lane. He did not see Ms. Bonvillain’s vehicle prior to the collision. At approximately the same time, Ms. Bonvillain was proceeding southbound on Kaliste Saloom, which was the favored roadway, at an estimated speed of 25-35 m,p.h. There was no traffic control device on Kaliste Saloom at its intersection with Farrel Road. Ms. Bonvillain was driving a vehicle owned by .her employer, State Farm, and was returning to work after lunch. As she approached the intersection, she first saw Mr. Ritchey’s vehicle as it emerged from in front of the vehicles waiting in the-left-turn lane and-entered her lane of traffic from the left. At that point, she was approximately half-way past the first vehicle in the turn-lane. According to her deposition testimony, she quickly applied her brakes, butRwas unable to avoid colliding with the rear, passenger-side of Mr. Ritchey’s vehicle. Ms. Bonvillain placed a 9Í1 call at 12:36 p.m., immediately after the aecident. Both Mr. Ritchey and Ms. Bonvillain indicated to the responding police officer that they were not injured. The officer issued a traffic citation to Mr. Ritchey for failure to yield the right-of-way at an intersection controlled by a stop sign. Mr. Ritchey testified in his deposition that Ms. Bonvil-lain was present on the scheduled court date for his ticket, and he assumed she spoke to the prosecutor on his behalf since the charge was dropped. Ms. Bonvillain was not issued a traffic citation. Mr. Ritchey thereafter filed this personal injury suit in the 19th Judicial District Court against State Farm and Ms. Bonvil-lain seeking to recover personal injury and property damages. In his petition, Mr. Rit-chey alleged Ms. Bonvillain was negligent in “driving in a reckless and careless manner, failing to see what she should have seen, failing to' maintain proper control and lookout, failing to apply brakes or take evasive action to avoid a collision when she had the last clear chance, [and] failing to act as a reasonable and prudent person under the circumstances.” After answering the petition, defendants filed a motion for summary judgment seeking dismissal of Mr. Ritchey’s claims on the grounds that he would be unable to “meet his burden of proving that Dawn Bonvillain caused or contributed to the accident.” In opposing the motion for summary judgment, Mr. Ritchey argued genuine issues of material fact existed regarding whether Ms. Bonvillain was comparatively at fault for failing to take “reasonable steps” and not exercising “the very slightest of care” in avoiding the accident. |4Following a hearing, the district court granted defendants’ motion for summary judgment and dismissed Mr. Ritchey’s suit with prejudice. Mr. Ritchey now appeals. SUMMARY JUDGMENT LAW A motion for summary judgment shall be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of thé motion for summary judgment, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3) & (4). On appeal, appellaté courts review the granting or denial of a motion for summary, judgment de novo under the same criteria governing the district court’s consideration of whether summary judgment is appropriate. Schultz v. Guoth, 10-0343 (La. 1/19/11), 57 So.3d 1002, 1005-06. In ruling on a motion for summary judgment, the district court’s role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of material fact. Hines v. Garrett, 04-0806 (La. 6/25/04), 876 So.2d 764, 765 (per curiam); Penn v. CarePoint Partners of Louisiana, L.L.C., 14-1621 (La. App. 1st Cir. 7/30/15), 181 So.3d 26, 30. A fact is material if it potentially ensures- or.precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the legal dispute. A-genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. All doubts should be resolved in thé non-moving party’s favor. Hines, 876 So.2d at 765-66. An issue of negligence or comparative fault may be decided on a motion for summary judgment, provided that the evidence leaves no relevant,- genuine issue of fact, and reasonable minds must inevitably conclude that the mover is entitled to judgment based on the facts | ¡¡before the court. See Blacklege v. Font, 06-1092 (La. App. 1st Cir. 3/23/07), 960 So.2d 99, 102; Charles v. Travelers Indemnity Company, 15-0966, p. 5 (La. App. 1st Cir. 5/10/16), 2016 WL 2669821 (unpublished). The burden of proof rests with the mover. La. C.C.P. art. 966(D)(1). But if the moving party will not bear the burden of proof at trial on the issue before the court on the motion, the moving party’s burden is satisfied by pointing out an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, the adverse party may not rest on the mere allegations or denials of his pleadings but must produce factual support sufficient to establish that he will be able to satisfy his evidentia-ry burden of proof at trial. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment as a matter of law. La. C.C.P. arts. 966(D)(1) & 967(B); Schultz, 57 So.3d at 1006; Charles, 15-0956 at p. 5. DISCUSSION On appeal, Mr. Ritchey contends in two assignments of error that the district court erred in granting defendants’ motion for summary judgment because genuine issues of material fact exist regarding whether Ms. Bonvillain had an opportunity to take reasonable steps to avoid the collision and failed to do so and whether she was on her cell phone at the time of the accident. He argues the district court improperly weighed the evidence and evaluated witness credibility in finding there was “no evidence to show that ... [it] would have made any difference had [Ms. Bonvillain] not been on the phone or that she would have seen him any sooner, given the circumstances of the intersection at the time of the collision.” Mr. Ritchey alleges that even though Ms. Bonvillain had the right-of-way, she had a duty after he entered the intersection to avoid the accident if she had a reasonable opportunity to do so. He maintains there is a genuine issue of material fact concerning whether she had such an opportunity. | (¡The duty of a motorist approaching an intersection controlled by a stop sign (here, Mr. Ritchey) is set forth in La. R.S. 32:123, as follows: A. Preferential right of way at an intersection may be indicated by stop signs or yield signs. B. Except when directed to proceed by a police officer or traffic-control signal, every driver and operator of a vehicle approaching a stop intersection indicated by a stop sign shall stop before entering the crosswalk on the near side at a clearly marked stop line, but if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection. After having stopped, the driver shall yield the right-of-way to all vehicles which have entered the intersection from another highway or which are approaching so closely on said highway as to constitute an immediate hazard. [Emphasis added.] The jurisprudence is clear- that stopping is only half of the motorist’s duty. The other half is for him to assess traffic and make certain the way is clear before proceeding. See Toston v. Pardon, 03-1747 (La. 4/23/04), 874 So.2d 791, 802; Irion v. State ex rel. Department of Transportation and Development, 98-2616 (La. App. 1st Cir. 5/12/00), 760 So.2d 1220, 1231, writ denied, 00-2365 (La. 11/13/00), 773 So.2d 727. Moreover, the second duty is heavier and requires an even greater degree of care when the intersection is blind, or partially obstructed. A motorist entering a superior highway where: his view is obstructed is under a duty to proceed with extraordinary caution. Toston, 874 So.2d at 802. Conversely, the duty of the motorist traveling on the favored street (here, Ms. Bonvillain) is minimal. Charles, 15-0956 at p. 6; Gutierrez v. Keller, 12-0987 (La. App. 4th Cir. 1/16/13), 108 So.3d 303, 306. In Sanchez Fernandez v. General Motors Corporation, 491 So.2d 633, 636 (La. 1986), the Louisiana Supreme Court explained this duty, as follows: A motorist on a right of way street is entitled to assume that motorists on the unfavored street approaching a stop sign will obey the traffic signal and will stop, look and yield the right of way to traffic proceeding on the favored street. Of course, once a right of way motorist in the exercise of ordinary [vigilance] sees that another motorist has failed to yield the right of way, a new duty thereafter 17devolves on the right of way motorist to take reasonable steps to avoid an accident if there is enough time to afford him a reasonable opportunity to do so. [Citation and footnote omitted.] The motorist on the favored roadway will be considered negligent only in exceptional cases where he could have avoided the accident by the- exercise of the slightest degree of care. Charles, 15-0956 at p. 6; McElroy v. Wilhite, 39,393 (La. App. 2d Cir. 5/18/05), 903 So.2d 627, 631. In the instant case, the basis of defendants’ motion for summary judgment is their contention that Mr. Ritchey would be unable to meet his burden of proving at trial that Ms. Bonvillain caused or contributed to the accident at issue. In support of their motion, defendants introduced the depositions of Mr. Ritchey and Ms. Bonvil-lain, the affidavits of Ms. Bonvillain and the responding police officér, and Ms. Bom villain’s certified cell phone records. In his affidavit, the responding police officer indicated Ms. Bonvillain had the right-of-way at the time-of the accident since Farrel Road was governed by a stop sign while there was no stop sign or traffic control signal on Kaliste Saloom. He further stated no one advised him during the course of his investigation that Ms. Bonvillain was using a cell .phone at the time of the accident. In both her deposition and affidavit, Ms. Bonvillain indicated that as she approached the intersection in question, driving approximately 25-35 m.p.h.,' Mr. Rit-chey’s vehicle suddenly appeared in her lane of traffic from the left. Ms. Bonvillain indicated she was only a short distance away, approximately half-way past the first vehicle in the left-turn lane, when she initially saw Mr. Ritchey’s'vehicle: She testified she “quickly” applied her brakes but was unable to avoid a collision with the rear portion of Mr. Ritchey’s vehicle. According to Ms. Bonvillain, she had no recollection of hearing any sounds as she applied her brakes. She denied being distracted or- talking, texting,' or • otherwise using her cell phone at the time of the accident. |sThe cell phone records presented by defendants reflect the last call made or received on Ms. Bonvillain’s cell phone pri- or to the accident was a brief call she received over twenty-five minutes prior to the 911 call. The last text message on her cell phone prior to the accident was an incoming text received approximately seven minutes before the 911 call. In opposition to defendants’ motion for summary judgment, Mr. Ritchey argued summary judgment was improper because genuine issues of'material fact existed regarding Ms. Bonvillain’s comparative fault. Specifically, he alleged there was a genuine issue of fact as to whether she was partially at fault in causing the accident by failing to take reasonable steps and exercising. the slightest of care to avoid the accident. He -further alleged the conflict between his assertion that Ms. Bonvillain told him she was on the phone at the time of -the accident and her • denial. of that allegation created another genuine issue of material fact. In support -of his opposition, he introduced excerpts from his deposition and the accident report prepared by the responding officer. ■We will first consider- whether-an issue of material fact exists with, respect to whether Ms. Bonvillain was “on the phone” at the time of the accident because that issue could potentially impact Mr. Rit-chey’s broader assertion that Ms. Bonvil-lain was distracted and failed to exercise the slightest degree of care in avoiding the accident. .Mr. Ritchey’s assertions regarding Ms. Bonvillain’s purported .cell phone usage is based on his deposition testimony stating that Ms. Bonvillain told him at the scene of the accident that “she was on the telephone whenever the accident . occurred.” Because Ms. Bonvillain denied making such a statement, Mr. Ritchey argues a genuine issue of material fact exists regarding this issue, despite the cell phone records defendants introduced revealing no phone calls were made or received by Ms. Bonvillain for' over twenty-five minutes prior to the'accident. Mr. |flRifchey points out that cell phones can be used for a variety of purposes other than phone calls, including checking emails or reading a text message. Based on our de novo review of the evidence introduced in conjunction. with the motion for summary judgment,- we find no merit in Mr. Ritchey’s contentions. Mr. Ritchey testified Ms. Bonvillain told him she was'on her cell-phone at the time of the accident and she denied doing so. Irrespective of this conflict, defendants presented evidence in the form of Ms. Bonvil-lain’s cell- phoné records showing that Mr. Ritchey would be unable'to prove at trial that Ms. Bonvillain was talking on her cell phone at the time of the accident. These records establish that her last call prior to the accident ended over twenty-five minutes before she placed the 911 cal! immediately after the accident. "Nevertheless, Mr, Ritchey argues Ms. Bonvillain’á cell phone records do not 'exclude the' possibility she’ was “on the phone” doing something other than talking since cell phones can be used for a variety of purposes. The’flaw in this argument is that the contention that Ms. Bonvillain was using her cell phone for some purpose other than talking is inconsistent 'with the totality of Mr. Ritchey’s deposition testimony. in his- deposition, Mr. Ritchey initially made the broad statement that Ms. Bonvillain told him she was-“on the telephone” when the accident occurred. However, when defense counsel later asked Mr. Ritchey who Ms. Bonvillain was “talking to,” he'replied, “She said the client that she was going to see.” Thus, the import of Mr. Ritchey’s overall testimony was not merely that Ms. Bonvillain was “on the phone,” which could encompass usage such as reading emails or texts, but specifically that'she was “talking” on her cell phone. Further, after defendants introduced- the cell phone records establishing Ms. Bonvil-lain was not talking on her cell phone at the time of the accident, Mr. Ritchey failed to come forward with factual support showing he would be able to prove at trial that Ms. Bonvillain was using her .cell phone in some other manner-when the accicjent | inoccurred. Accordingly, no genuine issue of material fact exists concerning Ms. Bonvillain’s cell phone usage at the time of the accident. We also find no merit in Mr. Rit-chey’s argument that a genuine issue of fact exists as to whether Ms, Bonvillain took reasonable steps and exercised the slightest degree of care in attempting to avoid the accident. In making this argument, Mr, Ritchey relies heavily on- the fact that his vehicle almost cleared the intersection before it was struck on the right rear quarter panel by Ms. Bonvil-lain’s vehicle. Mr. Ritchey also places emphasis on his deposition testimony that he did not hear “any screeching tires or anything” prior to the impact. Although not clearly articulated, Mr, Ritchey seems to be arguing there is a conflict between Ms. Bonvillain’s testimony that she was not distracted and applied her brakes quickly as soon as she saw his vehicle enter her lane of traffic and his testimony that he “did not hear any indication that [Ms. Bon-villain] attempted to avoid the accident,” combined with the fact that he almost cleared the intersection before his vehicle was struck. Contrary to Mr. Ritchey’s assertions, we And no conflict or inconsistency between Mr. Ritchey’s testimony that he did not hear screeching tires or brakes and Ms. Bonvillain’s testimony that she was not distracted and applied her brakes as soon as she saw Mr. Ritchey’s vehicle entering her traffic lane. Like Mr. Ritchey, Ms. Bonvillain also testified that she did not hear any sounds when she applied her brakes. Nor did Mr. Ritchey present any evidence indicating that under the circumstances present, including the fact that Ms. Bonvillain was travelling at only 25-35 m,p.h., the sound of screeching tires or any other sound should have been audible to either him or Ms. Bonvillain when she applied her brakes. Further, the fact that Mr. Ritchey’s vehicle had almost cleared the intersection at the time of impact in no way conflicts with Ms. Bonvillain’s account of the accident. Her uncontradicted testimony was that there was only a Inshort distance existing between her vehicle and that of Mr. Rit-chey’s when he unexpectedly entered her lane of traffic. She testified further that she quickly applied her vehicle’s brakes when she saw Mr. Ritchey’s vehicle, but she was unable to avoid the collision. Thus, her testimony indicates the accident was unavoidable , on her part. This evidence shifted the burden of proof to Mr. Ritchey to produce factual support to shqw he would be able to satisfy his burden of proving at trial that Ms. Bonvillain, who had the right-of-way in this instance, failed to take reasonable steps or to exercise the slightest degree of care to avoid the accident. See La. C.C.P. art., 966D(1). Mr. Ritchey failed to come forward with any such evidence. When a motion for summary judgment is made and supported, an adverse party may not rest on the mere allegations or denials' of his pleadings, but his response, by affidavits or as otherwise provided in La. C.C.P. art. 967 must set forth specific facts showing that there is a genuine issue for trial. La. C.C.P. art. 967(B). Mere conclüsory allegations, improbable inferences, and unsupported speculation will not support a finding of a genuine issue of material fact. Charles, 15-0956 at p. 5; Scott v. City of Shreveport, 49,944 (La. App. 2d Cir. 6/24/15), 169 So.3d 770, 773, writ denied, 15-1438 (La. 10/9/15), 186 So.3d 1149; see also Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La. 7/5/94), 639 So.2d 730, 755 (conclusory allegations are insufficient to withstand summary judgment). In the instant case, Mr. Ritchey’s contention that a genuine issue of fact exists regarding Ms. Bonvillain’s comparative fault is based on conclusory allegations and unsupported speculation that she failed to take advantage. of an opportunity to avoid the accident because she was distracted. The evidence • introduced in conjunction with the motion for summary judgment reflects an absence of factual support for the essential element of Mr. Ritchey’s claim against defendants that Ms. Bonvillain was at least partially at fault in causing the accident. I ^CONCLUSION For-the reasons assigned, the judgment of the district court granting summary judgment in favor or defendants dismissing Mr. Ritchey’s suit with prejudice is affirmed. All costs of this appeal are to be paid by Mr. ,Ritchey. AFFIRMED. McDonald J. assigns additional reasons. McDONALD, J., agrees and assigns additional reasons. l.fl agree with and join in the majority opinion. However, I take this opportunity to express additional reasons. It is hard for me to understand how this lawsuit got filed in the first place. I could possibly understand how Ms. Bonvillain could have filed -suit since she was the victim of the negligence of Mr. Ritchey. However, as stated by a local Baton Rouge attorney’s television commercial, she became a victim twice. She was a victim of the.accident and then of this lawsuit. • Mr. Ritchey attempted to cross the intersection when his vision was obstructed by the left turning motorist. He was unable to see Ms. Bonvillain but claims she should have seen him. She was traveling in the through lane of traffic when Mr. Rit-chey’s vehicle-suddenly appeared from-in front of the left turning vehicle. Mr. Rit-chey suggests he never heard any screeching tires or brake noise. Of course he didn’t, because he drove out in front of Ms. Bonvillain and she did not have time to react. She was traveling between 25 mph and 35 mph. At 30 mph she was |2traveling about 44 feet per second. While there is nothing in the record as to the reaction time for her to see Mr. Ritchey’s vehicle and apply her brakes, it certainly could not have been instantaneous. She probably hit him before she even had an opportunity to apply her brakes. Mr, Ritchey suggests he had entered the intersection and had pre-empted it citing Fernandez v. Gen. Motors Corp., 491 So.2d 633 (La. 1986). While this is a correct statement of the law, it only applies in situations where it is apparent that a vehicle has entered and pre-empted the intersection. Mr. Ritchey’s testimony contradicts any application of this theory. How could he pre-empt an intersection if Ms. Bonvillain did not know he was there. He states that he could not see her because his vision was blocked by the turning vehicle. If he could not see her, then she also could not see him. I do not believe this suit ever had any merit. I commend the trial court for granting the-motion for summary judgment and my colleagues for voting to affirm it.